FULFORD, Respondent, v. CLEVELAND, Appellant.

(226 N. W. 739.)

(File No. 6728.   Opinion filed September 20, 1929.)

*Johnson & Simons,* of Sioux Falls, for Appellant.
*Jones, Matthews & Fitzpatrick,* of Sioux Falls, for Respondent.

BROWN, J.   James F. McKeon, who died November 1, 1924, had been a workman in the employ of the city of Sioux Falls.   On the ground that his last illness and death resulted from inhalation of sewer gas while working in a sewer trench in the course of his employment, his widow, Libbie McKeon, claimed from the city under the Workmen's Compensation Law (Laws 1917, c. 376, as amended) compensation on account of his death in the sum of $3,000, less $704.55, which had been paid him by the city while he was unable to work, between the time of the injury and his death. After some negotiations, conducted on behalf of the widow by R. W. Parliman as her attorney, a settlement was effected, pursuant to which the city paid the widow $2,000, and took from her a writing, which she executed, reading as follows:

"Receipt and Release.

"Receipt is hereby acknowledged by the undersigned, beneficiary under the Workmen's Compensation Law of the state of South Dakota of James F. McKeon, deceased, of the sum of two thousand dollars ($2,000.00), allowed and paid to the undersigned by the city of Sioux Falls in full settlement of her claim against the city of Sioux Falls as the result of the death of her husband, James F. McKeon, due to an accident arising out of and in the course of his employment with said city; and in consideration of the payment of said sum of two thousand dollars ($2,000.00) the undersigned hereby releases said city of Sioux Falls of any further liability on account of the death of said James F. McKeon.

"Dated at Sioux Falls, South Dakota, this 25th day of February, 1925.

"[Signed]   Libbie McKeon."

Plaintiff, who is a physician, was employed by the deceased, and rendered him professional services of the alleged value of $532.25, $88 of which was paid during McKeon's lifetime, leaving an unpaid balance of $444.25.   No administration was had on McKeon's estate; he may not have left any estate.   Some time after-

wards his widow died, defendant was appointed administratrix of her estate, and plaintiff filed a claim for the $444.25 against her estate. It was rejected by the administratrix, but on a hearing had the county court allowed it, with interest, $537.50 in all. On appeal to the circuit court, a jury found a verdict for plaintiff for $294.25, with interest from date of McKeon's death—in all, $361. From judgment on the verdict, and from an order denying a new trial, defendant appeals.

It is conceded that Libbie McKeon was not liable originally for plaintiff's bill. During the trial plaintiff's counsel stated in the record: "The plaintiff is proceeding on the theory that this was originally the bill of James F. McKeon, and was subsequently adopted by Libbie McKeon."

There is no evidence that she ever personally agreed to pay the bill; the only evidence as to her personal attitude towards the bill is that three operations, charges for which are included in it, were performed contrary to her objections, and that she explicitly refuses to pay the bill.

But it is contended that her attorney, Parliman, agreed with the city commissioners that she should pay it, and that this was a contract made with a third party for the benefit of plaintiff, who has a right to enforce it, and the court submitted the case to the jury on this theory. The evidence which respondent contends proves such a contract is contained solely in the testimony of Roy D. Burns, the city attorney, who says that during the negotiations with the city commission about Libbie McKeon's claim "* * * it was discussed whether it should be a certain amount plus doctor bills, or a certain amount including doctor bills, and it was finally determined that the city should pay $2,000, and all doctor bills and other expenses should be paid up by the McKeons, and that in consideration of the $2,000 payment the city was to be released of all their liability in connection with this matter, and Mr. Parliman, representing the McKeons, discussed that matter with the city commission and that agreement was made with the attorney for the McKeons." Parliman testified that there was no agreement or understanding of any kind that Dr. Fulford's claim would be paid out of this compensation money that was turned over to Libbie McKeon. He said: "Whatever talk we had—if we had one—was embraced in the receipt which was signed by Mrs. McKeon."

But, disregarding the conflict, and taking Burns' testimony as undisputed, it falls far short of showing a contract made for the benefit of plaintiff. He says it was finally determined that the city should pay $2,000, in consideration of which it was to be released from all liability, "and all doctor's bills and other expenses should be paid up by the McKeons," "and that agreement was made with the attorney for the McKeons."

Even if it were shown—which it is not— that Parliman had authority to make such an agreement on behalf of Mrs. McKeon, the agreement testified to is simply that, as between the city and Mrs. McKeon, she would take care of doctor's bills and other expenses. There was no agreement made expressly for the benefit of plaintiff, within the meaning of Rev. Code 1919, § 808. The city was in no manner liable to plaintiff. It had not employed him. His own testimony is conclusive that McKeon employed him at his own expense, and made payments to him while he lived. The employee may elect to secure his own physician at his own expense. Rev. Code 1919, § 9459.

■ If such a contract or agreement was made as respondent claims arises from the facts testified to by Burns, there was no consideration for it from plaintiff, and no duty or obligation to him, outside the contract, from the city. And a stranger to a promise may not sue thereon, where there is no consideration therefor from him, and no duty or obligation to him, outside the contract, from the promisee. Fish & Hunter Co. v. New England Homestake Co., 27 S. D. 221, 130 N. W. 841; Jefferson v. Asch, 53 Minn. 446, 55 N. W. 604, 25 L. R. A. 257, 39 Am. St. Rep. 618.

■ There is no evidence whatever that Parliman had any authority from Libbie McKeon to make any such contract or agreement on her behalf. The trial court instructed in substance that his employment as her attorney to present the claim to the city and negotiate for its settlement carried with it such authority by implication. This was error. "An attorney has no implied power to bind his client by acknowledging a debt," nor to bind his client by contract. 6 C. J. 656; McLain v. Nurnberg, 16 N. D. 144, 112 N. W. 243.

The judgment and order appealed from are reversed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, and BURCH, JJ., concur.